**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

REBECCA UZELMEIER                          )
                                           )
      Plaintiff,                        )
                                           )
      v.                                )     Civil Action No. 07cv753 (PLF)
                                           )
UNITED STATES DEPARTMENT OF                )
HEALTH AND HUMAN SERVICES, et al.          )
                                           )
      Defendants.                       )

---

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND**
**OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

      In Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary

Judgment ("Plaintiff's Opposition"), Plaintiff attempts to insert documents and her own

conclusory allegations that were not before the administrative body that debarred her for

research misconduct in an attempt to re-open the fact-finding procedures and avoid being

confined to the administrative record. Nevertheless, the law is clear on such APA review

matters: "[T]he court's inquiry is limited to determining whether the agency examined the case

facts and articulated a satisfactory explanation for its decision, including a 'rational connection

between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*

*Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Accordingly, Plaintiff cannot present evidence or

arguments that were not before the Administrative Law Judge ("ALJ").

      Limited to the facts in the record (and even with Plaintiff's attempted additions), Plaintiff

failed to demonstrate that her administrative request for a hearing properly raised an objection

before the ALJ, or that the ALJ's decision was arbitrary and capricious when she dismissed

Plaintiff's administrative hearing request.

**I.  PLAINTIFF FAILED TO DEMONSTRATE THAT THE ADMINISTRATIVE LAW JUDGE'S DECISION WAS ARBITRARY, CAPRICIOUS OR AN ABUSE OF DISCRETION**

Plaintiff's opposition is replete with allegations that are irrelevant to the matter before this Court for judicial review.  By including countless claims and citations which are beyond the scope of review, Plaintiff attempts to transform the judicial review of her case into a *de novo* hearing.  The narrow issue presented for judicial review is whether the ALJ's decision to dismiss the Plaintiff's Request For Hearing was arbitrary or capricious, an abuse of discretion or otherwise not in accordance with law.[1]

**A.  Mandatory Requirement for a Hearing Request**

According to the regulation, the hearing request *must*:

(1)    Admit or deny each finding of research misconduct and each factual assertion made in support of the finding;

(2)    Accept or challenge each proposed HHS administrative action;

(3)    Provide detailed, substantive reasons for each denial or challenge;

(4)    Identify any legal issues or defenses that the respondent intends to raise during the proceeding; and

(5)    Identify any mitigating factors that the respondent intends to prove.

42 C.F.R. § 93.501(c) (emphasis added).

In addition, according to Section 93.503(a), the hearing request must allege a "genuine

---

[1]    "The 'scope of review under the arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency.'"  *Lacavera v. U.S. Patent and Trademark Office*, U.S. Dist. LEXIS 29205 *9 (D.D.C. Nov. 30, 2004) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto, Ins. Co.*, 463 U.S. 29, 43 (1983)).

dispute" regarding material facts.  42 C.F.R. § 93.503(a). According to the relevant sections,

dismissal of a hearing request is proper if the respondent:

(2) Does not raise a genuine dispute over facts or law material to the findings of  research misconduct and any administrative actions, including debarment and suspension actions, in the hearing request or in any extension to supplement granted by the ALJ under § 93.501(d);

(3) Does not raise any issue which may properly be addressed in such a hearing....

42 C.F.R. § 93.504.  The regulation also expressly states that a "*general denial* or assertion of

error for each finding of research misconduct, and any basis of the finding, or for the proposed

HHS administrative actions in the charge letter, *is not sufficient to establish a genuine dispute*."

Id. (emphasis added).

## B.    Dismissal of a Hearing Request

The D.C. Circuit Courts have held that "[t]he key to the arbitrary and capricious standard

is its requirement of reasoned decision-making: we will uphold the [agency's] decision if, but

only if, we can discern a reasoned path from the facts and considerations before the [agency] to

the decision it reached."  *Neighborhood TV Co. v. FCC*, 742 F. 2d 629, 639 (D.C. Cir. 1984).  In

the present matter, the ALJ's decision clearly provides a "reasoned path" from the considerations

before the agency to the decision reached.

In her consideration of the Plaintiff's Request for Hearing, the ALJ set forth the

requirements of § 93.501(c).  See "Dismissal of Respondent Uzelmeier's Hearing Request,"

*Office of Research Integrity v. Rebecca Uzelmeier*, Case No. C-07-32 (2007) (Def. Exh. 2) at 2.

The ALJ further spelled out that the issue for her consideration was "whether [Plaintiff] has

raised a genuine dispute over facts or law material to ORI's findings of research misconduct that

may properly be addressed in a hearing."  *Id.*   The ALJ then discussed and overruled each of

3

Plaintiff's twenty-five (25) "affirmative defenses," finding that through "pages and pages of assertions, I could not find one [genuine dispute]. Her general denials and assertions of error are not sufficient to establish a genuine dispute. 42. C.F.R. § 93.503. Therefore, as required by 42 C.F.R. § 504(a), her hearing request is dismissed." See *id.* at 9. The ALJ considered each of Plaintiff's lengthy responses to ORI's specific findings and found that Plaintiff "justifies her refusal to provide detailed, substantive responses by repeating her Fifth Amendment objections." *Id.* At 8. The ALJ noted that Plaintiff's "200 pages of responses do little more than incorporate variations of her affirmative defenses." *Id.* "[A]mong these responses are a smattering of statements that appear more responsive to the specific factual charges" but that "even these are essentially variations on her affirmative defenses" and "none are material to the underlying issue of research misconduct." *Id.*

Thus, despite having filed a 200-page, single-spaced pleading, Plaintiff's hearing request did not meet the minimum requirements set forth in the regulation. Rather than comply with the governing regulation regarding the content of the pleading, the Plaintiff alleged numerous inapplicable and legally and factually insufficient affirmative defenses. Plaintiff expressly did not provide any *detailed substantive reasons* for any of her denials of any of the allegations set forth in the ORI findings.[2] Instead she responded to each individual finding with repeated "copy/paste" renditions of inapplicable excuses.[3]

---

[2]     See e.g. Plaintiff's Request for Hearing, (Def. Exh. 5) p. 14 ("[Plaintiff] hereby objects to responding to any of the specific allegations raised by ORI on the basis of the 5th Amendment of the United States Constitution").

[3]     For example, in her Request for Hearing the Plaintiff repeatedly cut and pasted paragraphs alleging that the evidence, such as the Michigan State University (MSU) Investigative

(continued...)

It is interesting to note that even in the section of her Opposition entitled "The ALJ Ignored Issues of Disputed Material Fact that Justified a Hearing Under the Governing Regulations," Plaintiff failed to set forth any evidence that raises a **genuine dispute of fact** relied upon by the ALJ. Plaintiff's Opposition at 18-19. Rather, Plaintiff merely re-iterates her non-factual arguments regarding mitigation and staleness, which were directly addressed and rejected by the ALJ. Accordingly, the ALJ considered whether the Request for Hearing met the mandatory pleading requirements in the regulation (42 C.F.R. §§ 93.501(c) and 93.503) and acted pursuant to the mandatory requirement that she dismiss the insufficient hearing request (42. C.F.R. § 93.504). The ALJ's decision that dismissal was proper in light of the fact that Plaintiff's Request for Hearing did not meet the requirements of the agency's regulation, and Plaintiff failed to demonstrate that the ALJ's dismissal of Plaintiff's hearing request was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.

## C.    **Permission for Supplementation is Discretionary**

In contrast, the ALJ has even wider discretion to permit or deny the Respondent to supplement her Request for Hearing upon a showing of *good cause* for the failure to fully comply with the hearing request requirements listed in § 93.501(c) of the Research Misconduct Regulation. Pursuant to Section 93.501(d) of the regulation, a respondent may submit a written request to the ALJ for supplementation of the hearing request in order to "comply fully" with the

---

[3/]    (...continued)
Report, is inadmissible; that MSU (which was not a party in the administrative proceeding) committed due process violations; that ORI lacks jurisdiction to make its finding; that the ORI finding "contains unsubstantiated conclusions;" that the finding is based on statements which are "taken out of context;" and that  "[n]o response is required" because Plaintiff is compelled to plead a 5th Amendment privilege; and that the finding is "hearsay" and/or "improper opinion testimony."

mandatory requirements for a hearing request, which are delineated in the preceding subsection, 93.501(c). The supplementation, if granted, would permit a respondent to make a partially complete hearing request whole.   "Good Cause" is defined as "circumstances beyond the control of the respondent or the respondent's representative and not attributable to neglect or administrative inadequacy."  See § 93.501(d)(2).

Before the ALJ, Plaintiff attempted to make an end-run around the mandatory pleading requirements in the regulation by filing a legally insufficient Request for Hearing and then rely on the possibility of being permitted to file a supplemental request for hearing.  By filing a legally insufficient Request for Hearing, the Plaintiff ran the risk that she would not be permitted to file a supplemental pleading.  Essentially, the effect of her refusal to provide any substantive denial is that she waived her right to a hearing.

Plaintiff's claim that the ALJ violated the APA's requirement at 5 U.S.C. §555(e) that an agency provide prompt notice of a denial of a request in an informal proceeding is also unfounded.  First, the ALJ did, in fact, provide Plaintiff with prompt notice of the denial of her Request for a Hearing, including a detailed statement of the ground for its denial.  Second, to the extent that Plaintiff asserts that section 555(e) applied to her request to supplement, the ALJ's finding that the Plaintiff failed to properly request a hearing in the first place effectively closed out her ability to supplement the request for hearing automatically, and the reasons for not allowing supplementation was obvious on its face.  See 5 U.S.C. §555(e) (notice and grounds for denial not required when "affirming a prior denial or when the denial is self-explanatory").

Notably, Plaintiff did not even reach the point of submitting an incomplete hearing request, because her request was noncompliant with the regulations governing such requests.

According to the ALJ, the hearing request was devoid of genuine disputes over material facts. Def. Exh. 2 at 9. Thus, any subsequent document submitted by Plaintiff was not the supplementation of a proper but incomplete request, rather it was an attempt to redo the improper hearing that utterly failed to comply with the regulations. The purpose of supplementation is not a chance to re-create a hearing request but an opportunity to add or supplement information that would serve to "fully" comply with the requisite criteria. As the ALJ stated, Plaintiff's hearing request, which lacked any detailed, substantive reason for her denials, "is exactly the type of hearing request that the regulations sought to eliminate." *Id*. at 8.

In any event, even if the Court were to find that the ALJ's decision was governed by section 555(e) and required a statement of the reasons for denial of her supplement, the result is not an automatic overturning of the ALJ's ultimate decision, as Plaintiff would have this Court believe. The Supreme Court has specifically directed that whether or not a written explanation was legally required under section 555(e), if the agency's decision "on the merits" provides a sufficient basis for its determination, "the [agency's] refusal to grant the relief requested was within its discretion." Heckler v. Chaney, 470 U.S. 821, 841-842 (1985). Here, the ALJ's written decision on the merits provides a detailed and sufficient basis for the denial of Plaintiff's hearing request, and accordingly, the Court cannot find that the failure to allow Plaintiff to supplement was an abuse of her discretion.

Plaintiff also claims here that she was unable to file a substantive response because the government had not provided her with all the documents she requested. Plaintiff's allegation, however, falls short because she failed to raise that allegation in her Request for a Hearing. By her own admission, Plaintiff had possession of "all the materials related to this case matter which

7

still exist" in storage or with her previous counsel.  See Def. Exh. 5 at 15.  Indeed, Plaintiff was

provided the same documents that ORI relied upon to make its findings of research misconduct.

Plaintiff was in no way harmed by the Defendant's refusal to comply with her document requests

because she already had the administrative record.[4]  At the time she filed her hearing request, and

for years before that time, Plaintiff had possession of the MSU Inquiry Report (with

attachments), the MSU Investigation  Report (with attachments), as well as numerous analytical

documents and figures created by ORI during its investigation.  Plaintiff cannot claim that the

Agency's denial of her Privacy Act requests for documents so inhibited her ability to comply

with the clear language of the regulation that she could allege absolutely nothing in her own

defense, including a substantive denial that she had engaged in research misconduct, because she

had the case files containing the documents to which she was entitled.

## D.    The MSU Police Department Report

Throughout the administrative proceedings, Plaintiff was well-aware of the existence of a

MSU Police Department Report, and the determination that sufficient evidence existed to find

that she filed a false police report in order to cover up her actions.  Specifically, ORI's Findings

of Misconduct explicitly sets forth the facts provided in the police report:

21.    Around the same date that Respondent began removing data, on July 15, 1999,

---

[4]    Plaintiff's claim regarding the police report is unfounded because the report was never
before the administrative decision-making body.  In any event, Plaintiff could have obtained the
police report directly from the MSU Police Department, but failed to.  Moreover, Plaintiff still
failed to demonstrate a "genuine" dispute concerning the "material" fact that (1) she took
documents from her office, (2) she filed a police report alleging that documents had been stolen
from her office, (3) she subsequently withdrew the same police report in which claimed she was
victim of larceny, and (4) her attorney returned documents that were taken by Plaintiff from the
laboratory.  See Plaintiff's Responses to Defendant's Statement of Material Facts at Responses 3-
6.

Respondent reported to the MSU police department that critical research information had been removed from her office without her authorization.

22.    MSU's  police department tried to follow  up with  Respondent on at least six occasions and interviewed several witnesses including Professor Kaminski, Dr. Barman, and Susan McKarns.  After Respondent's initial report, she never replied to the police department's request for additional questioning.

23.    About fifteen days after Respondent reported the alleged theft of her data, Officer Zezulka of the MSU Police Department received a call from Respondent's then attorney, Jeffrey Green, who stated that Respondent "indicated that the larceny report was unfounded."

24.    Moreover, on October  11, 1999, Respondent's attorney returned to  MSU  the allegedly stolen data that she herself was caught absconding with  early in the morning on July 14 or 15, 1999.

Def. Exh. 3 at 5.  Additionally, ORI further determined noted that:

145.    Additionally, not only did Respondent refuse to take responsibility for her conduct, she also attempted to obstruct the MSU investigation.  Examples include:

*    After Professor Kaminski requested that Respondent turn over all available data supporting her research, and after she represented to him that the data she turned over was all that she had in her possession, Respondent was caught taking her research notebooks from the laboratory at l:30a.m. on July 14 or 15, 1999.

*    About three months later, on October 11,1999, her attorney returned these notebooks to MSU.

*    Coincidentally, on or on around the same date that she was observed taking date from the laboratory, on July 15, 199, Respondent filed an incident report with the MSU police department alleging that someone stole her data.

*    Respondent later admitted through her attorney that the larceny report was unfounded.

*Id*. At 28-29.  Nevertheless, despite such repeated notations, Plaintiff failed to present to the

administrative body or the ALJ any affidavit from the attorney that the information conveyed to

the ORI or the ALJ was wrong, nor did she provide any evidence whatsoever to dispute these allegations.  In fact, as was noted by the ALJ, Plaintiff's Request for Hearing failed to make any factual assertion as to the facts as presented by the ORI other than to assert her 5th Amendment Rights and refuse to make a statement. See Def. Exh. 5 at 5.  Plaintiff cannot now challenge factual allegations that were unchallenged in the administrative proceedings below, nor can she now present statements that were not presented to the ALJ and never considered in making the determination on the merits.[5]

## II.    OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEBARMENT ISSUES.

### A.    The Agency's Decision to Debar Plaintiff Was Not Arbitrary and Capricious or an Abuse of Discretion.

The ALJ found that Plaintiff failed to raise any issues material to the findings of research misconduct or any issues which may properly be addressed in a hearing. *See* Def. Exh. 2 at  2-3 (ALJ's Dismissal).  Plaintiff attempts to interpret the ALJ's ruling as failure to address the administrative action that HHS proposed. Plaintiff's Opposition, pp. 11-12.

On the contrary, the ALJ specifically responded to Plaintiff's assertions that her personal and professional life changes somehow disqualify her from debarment.  In her Opposition

---

[5]    Nor do the facts as presented to the ALJ become "implausible on its face" merely because Plaintiff has received a copy of the police report.  The facts as alleged did not change after the report was produced, but rather the police report demonstrates that there was an evidentiary basis for the facts that were presented to the ALJ.  Moreover, contrary to Plaintiff's claim that "no lawyer would *ever* do such as thing," any attorney who complies with the ethical code of conduct governing attorney actions would do exactly as was described in the police report.  The attorney properly and ethically notified the police of the fact that no theft occurred so as to end the obstructive behavior of his client, and further returned stolen documents that came into his possession.  The circumspect manner in which he informed the police that no theft actually occurred (and thereby avoided making any admission that could form the basis of a criminal charge) is further supportive of the finding that such an incident did occur.

10

Memorandum, Plaintiff again presented the life changes which constituted her challenge on this issue before the ALJ as follows: "(1) [Plaintiff] left MSU without a degree, consequently possessing no advanced degree and no scientific licenses; (2) [Plaintiff] was therefore not a threat to become a government contractor nor recipient of government funds; (3) [Plaintiff] moved on with her life in the seven and-a-half years that had transpired since the incidents at MSU, including changing her career, marrying, and having a child; (4) In addition to not having any professional qualifications to be awarded grants or other government monies, [Plaintiff] without contradiction, asserted she had never been an applicant for federal funds and would not become such an applicant in the future; and (5) [Plaintiff] completely abandoned pursuit of a career in the sciences, for which she had unsuccessfully attempted to obtain an advanced degree, radically changing her career and becoming a financial consultant." Plaintiff's Opposition Memorandum, p. 30. In response, the ALJ stated the debarment regulation, 45 C.F.R. § 76.135 authorizes HHS to exclude a person who is not currently participating in a federally funded grant or contract. The ALJ noted that current non-participation in covered transactions is not a consideration relevant to a debarment proceeding; ORI is bound to comply with the federal statutes, regulations, secretarial delegations of authority and agency policies. *See* Def. Exh. 2 at 3.

Plaintiff melds "her complaint of improper punishment with her timeliness complaint to argue that ORI's long delay transforms her debarment from 'an act for the protection of the public interest' into a form of punishment." Def. Exh. 2 at 5. Plaintiff engages in a circuitous argument that she is now presently responsible because while ORI delayed in prosecuting her, she, in the meantime, got married and had a child. Plaintiff conveniently glosses over her own unclean hands in taking an active part in delaying the issuance of a charge letter by dragging out

11

the duration of the settlement discussions. *See* Defendant's Motion to Dismiss, p. 21.

Throughout her pleadings in this case and before the ALJ, the Plaintiff has pled no facts or circumstances which would mitigate against the imposition of debarment under the Research Misconduct Regulation, 42. C.F.R. Part 93, or the debarment regulations codified at 45 C.F.R. Part 76.[6] Section 93.408 of the Research Misconduct Regulation sets forth mitigating and aggravating factors HHS should consider regarding administrative actions by the agency. Specifically, the aggravating and mitigating factors the agency must consider when taking an administrative action are: whether the respondent's misconduct was done in a knowing, intentional, or reckless manner; whether it was part of a pattern; its impact; whether the respondent has accepted responsibility by admitting misconduct; cooperating with the investigation; demonstrating remorse; accepting responsibility; whether the respondent retaliated; and the respondent's present responsibility. *See* 42. C.F.R. § 93.408. In addition, the debarment regulation, 45 C.F.R. § 76.860, sets forth sets forth approximately nineteen (19) factors which "influence" the agency's decision to impose a debarment on an individual. Like the aggravating and mitigating factors in the Research Misconduct Regulation, these factors are focused on the seriousness, frequency, and impact of the respondent's misconduct, as well as the affirmative steps the Respondent has taken to take responsibility for the misconduct and to prevent future misconduct. *See* 45 C.F.R. § 76.869 (a)-(s).

In her Opposition, Plaintiff cites to various life circumstances which she argues constitute a challenge to the agency's debarment action. Plaintiff's Opposition at 30. None of the facts

---

[6]    On March 1, 2007, HHS promulgated 2 C.F.R. Part 376 which superceded, 45 C.F.R. 76. The effective debarment regulation at the time HHS imposed debarment in this case was 45 C.F.R. Part 76.

cited by the Plaintiff, even if proven, are relevant to the mitigating and aggravating factors set forth in the regulation. Plaintiff has not pled any facts which indicate that she has taken any affirmative steps to accept responsibility for her fraudulent research misconduct. She has admitted to no wrongdoing and demonstrated no remorse. She has behaved dishonestly and unprofessionally by admittedly taking files from her office in the middle of the night and filing a police report alleging that items were stolen from her office. Def. Exh. 8. She has tried to blame others by claiming, in her police report that her data was stolen and then, through her attorney, "withdrawing" her criminal complaint concerning an alleged larceny. Def Exh. 8 (police report) and Plaintiff's Exh. 2 (Jeffrey Green's Affidavit).

Plaintiff incorrectly assumes that only persons with doctorate degrees or business owners who commit research misconduct are eligible for debarment. She is under the false assumption that she cannot be a threat to the federal fisc because she has not obtained a doctorate degree and does not own a business. That limitation does not exist in the Research Misconduct Regulation or in the debarment regulation. In fact, laboratory technicians who do not possess doctorate degrees and who are not principal investigators on a research grant may be debarred when circumstances warrant such action. *See* Findings of Research Misconduct, James David Lieber, 72 Fed. Reg. 40157, July 23, 2007 (staff research associate); Diana Layman, 72 Fed. Reg. 34690, June 25, 2007 (phlebotomist); Wein Jin, 72 Fed. Reg. 32123, May 8, 2007 (former doctoral candidate); April Swe, 71 Fed. Reg. 8304, Feb. 16, 2006 (former graduate student); and Nicholas McMaster, 71 Fed. Reg. 71172, Dec. 8, 2006 (undergraduate student). Unlike Plaintiff, the aforementioned respondents accepted responsibility for their actions and formally agreed to exclude themselves from covered transactions by signing a legally binding agreement.

13

Short of debarment, there is absolutely no barrier whatsoever to Plaintiff's involvement in federally-funded research projects or any other federal grants or contracts. Despite her statements that she presently has no intention to work in any scientific field, Plaintiff is quite capable of doing so due to her five years of graduate studies and her prior work history as a research technician and laboratory manager at the National Institutes of Health for more than a year.

When reviewing an administrative decision, the Court must evaluate the agency's decision and hold the agency's action as unlawful if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Under this standard, the reviewing court applies a presumption that the agency's decision was valid, and the plaintiff bears the burden of proving that such decision was arbitrary or capricious. By presenting the list of life changes, irrelevant arguments and an empty promise that she will not engage in scientific research, Plaintiff has failed to meet her burden of proving the arbitrary or capricious nature of the ALJ's decision to dismiss her hearing request in its entirety, including the debarment issue.

Although interesting personal milestones, marriage and childbearing are not legal impediments to engaging in covered transactions. The ALJ acknowledged Plaintiff's life circumstances and concluded that Plaintiff failed to raise a genuine dispute over facts or law that could be properly addressed at a hearing. Thus, the ALJ's dismissal of the hearing request and the agency's subsequent finalization of the debarment were justified and proper.

III.    **DEFENDANT'S PRIVACY ACT CLAIM SHOULD BE DISMISSED**

On September 14, 2006, Plaintiff made two requests to the HHS Office of the General

Counsel.  The first was for a copy of the charge letter in Word and/or WordPerfect format

pursuant to the Privacy Act and Freedom of Information Act (FOIA).  The second was under the

Privacy Act for the documents referenced in the charge letter that were not attached, such as a

copy of the NIH grant and a copy of the MSU Police Department Incident Report.  Both were

entitled "Request for electronic version of Charge Letter." On September 29, 2006, the Public

Health Service FOIA officer denied both requests and indicated that Plaintiff had the right to

appeal the decision within thirty days of the receipt of the letter.  Plaintiff never appealed.

### A.     Exhaustion of Administrative Remedies

In her Opposition, Plaintiff treats the standards governing the Privacy Act and the

Freedom of Information Act ("FOIA") interchangeable by suggesting that the Court must require

the government to comply with the requirements of *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir.

1973), by submitting a *Vaughn* Index.  The standards of the two statutes, however, are not

interchangeable, and a *Vaughn* Index is not proper.

In *Vaughn*, the appellant sought review of the lower court's denial of appellant's request

for information under FOIA.  The Court of Appeals for the District of Columbia Circuit proposed

that in order for the agency to meet its burden of justifying its denial of disclosure, the agency

could create an index system, now known as the *Vaughn* Index.  This type of index would assist

the trial court in making a decision concerning the appropriateness of the agency's nondisclosure.

*Vaughn*, 484 F.2d at 827.

Plaintiff's insistence on the production of a *Vaughn* Index in misplaced in the instant case

for two reasons.  First, Plaintiff's complaint concerns the denial of their Privacy Act request, and

not a FOIA request.  See Plaintiff's Complaint at Count 1; see also Plaintiff's Opposition

Memorandum at 40.  While the FOIA exemptions are "specific" exemptions that apply only to individual documents (thus requiring an indexed listing of the requested documents because "[w]hen the Government makes a general allegation of exemption, the court may not know if the allegation applies to all or only a part of the information"), the Privacy Act Exemptions apply to whole systems of records, and is not susceptible to indexing.  *Miller v. Director of F.B.I.*, 1987 WL 18331 at *2 (N.D. Ill. 1987) (quoting *Shapiro v. Drug Enforcement Administration*, 721 F.2d 215, 218 (7th Cir. 1983), vacated on other grounds sub nom. *U.S. Dept. of Justice v. Provenzano*, 469 U.S. 14 (1984)).

Second, even if Plaintiff's Privacy Act complaint encompassed the denial of a FOIA request, such a FOIA issue is not ripe for judicial review.  Under FOIA, administrative remedies must be exhausted prior to judicial review.  When a FOIA plaintiff fails to properly undertake a complete and timely exhaustion of administrative remedies before attempting to obtain judicial review, that FOIA lawsuit is subject to immediate dismissal because the "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA."  *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004) (citing *Oglesby v. United States Dep't of the Army*, 920 F. 2d 57, 61-64 (D.C. Cir 1990).  Generally, exhaustion of administrative remedies is required before filing suit in federal court.  *Oglesby*, 920 F. 2d at 61.  Although the exhaustion requirement is not jurisdictional, "as a jurisprudential doctrine, failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar."  *Hidalgo v. FBI*, 344 F. 3d 1256, 1258-1259 (D.C. Circuit 2003) (citing *I.A.M. Nat'l Pension Fund Ben. Plan C. V. Stockton TRI Indus.*, 727 F. 2d 1204, 1208 (D.C. Cir. 1984)).

Pursuant to the HHS FOIA regulation at 45 C.F.R. Part 5, a requester has the right to

appeal a denial of the FOIA request within 30 days of receipt of the denial letter. 45 C.F.R. §

5.34. Plaintiff never sought an appeal of a denial of a FOIA request.  Because the exhaustion

requirement was not met on any FOIA denial, Plaintiff's current demand for a *Vaughn* Index is

premature and entirely irrelevant to this case.

### B.    Privacy Act Claim must Fail Because Plaintiff Has the Administrative Record

The final rule entitled "Public Health Service Records Related to Investigations of

Scientific Misconduct, HHS/OASH/ORI" indicates that "the Department [HHS] is exempting

this system under paragraphs (k)(2) and (k)(5) of the Privacy Act from the notification, access,

correction, and amendment provisions of the Privacy Act (paragraphs(c)(3), (d), (e)(4)(G) and

(H) and (f).  However, consideration will be given on a case-by-case basis to requests for access,

notification, and corrections which are addressed to the system manager."  Privacy Act; Exempt

System, 59 Fed. Reg. 36717 (July 19, 1994).

Plaintiff misconstrues the plain language in the Privacy Act concerning subsection (k)(2).

Plaintiff incorrectly states that (k)(2) of the Privacy Act instructs that investigatory material *only*

be withheld if the disclosure would reveal a source who provided information to the Government

under a promise that his or her identity would be held in confidence. *See* Plaintiff's Opposition

Memorandum, p. 41.  Section (k)(2) of the Privacy Act actually states that the head of an agency

may exempt a system of records from various requirements of the Act, including the access

provision at section(d), if the system of records is

> . . . (2) investigatory material compiled for law enforcement purposes . . .
> *Provided however*, That if any individual is denied any right, privilege or benefit
> that he would otherwise be entitled by Federal law, or for which he would
> otherwise be eligible, as a result of the maintenance of such material, such

> material shall be provided to such individual, except to the extent that the
> disclosure of such material would reveal the identity of a source who furnished the
> information to the Government under an express promise that the identity of the
> source would be held in confidence, or prior to the effective date of this section,
> under an implied promise that the identity of the source would be held in
> confidence.

5 U.S.C. §552 (k)(2)

Although the records are exempt because they are considered records inherently compiled for investigatory purposes, Plaintiff has the records upon which ORI relied to make its findings of research misconduct, as well as the documents upon which the ALJ relied to deny her request for a hearing.

To the extent that Plaintiff is entitled to records that ORI relied upon in making findings of research misconduct, which Plaintiff received with the charge letter dated September 6, 2006. Def. Exh. 3 (ORI charge letter), she received the documents. The charge letter included an ORI image supplement in addition to the MSU investigation report. MSU sent the report when the findings were made with photographic quality reproductions of the figures and data in question. See MSU Investigation Report at p.48. This is confirmed by Plaintiff's statement in her hearing request that her current attorney "recently obtained" the documents that were in the control of Plaintiff's previous attorney. See Plaintiff's Hearing Request, p. 15.[7]

---

[2] Likewise, her claim that she should have been allowed to have Dr. Whitehurst conduct an "independent investigation" is unfounded. As the University noted in its Investigative Committee Report, "[t]o the extent that Ms. Marcus wishes an independent investigation of Dr. Kaminski's allegation that she committed Misconduct, this Committee has done exactly that...." Def. Exh. 4 at 48. Plaintiff has not asserted, nor has she presented any evidence that the investigation by the Committee was anything else but fair and independent. Indeed, she was allowed to present her case to the Committee and explain why her data appeared to be falsified or fabricated. All facts necessary to explain her case were within her exclusive knowledge, nevertheless she was unable to provide any answers. Accordingly, her assertion regarding the

(continued...)

Plaintiff relies upon the American Bar Association Practitioner's Guide to Suspension and Debarment (ABA Guide), a publication that is not binding upon the Court, to reiterate that ORI should have provided Plaintiff access to documents that ORI utilized to reach its findings of research misconduct. Although ORI did submit a detailed charge against Plaintiff for research misconduct, ORI never provided any withheld documents to the ALJ, and therefore has not deprived Plaintiff of any documents contained in the administrative record.

Nor did the lack of the inclusion of the MSU police report preclude Plaintiff from submitting a legally sufficient hearing request concerning the findings of research misconduct or the administrative actions imposed. Plaintiff focuses on the issue concerning receipt of the police report; however, neither the police report nor the contents within it were the subject or the basis for a finding of research misconduct, nor were they ever challenged in the administrative proceeding below. Plaintiff admitted to taking documents from her office; however, that unauthorized removal of that data was not a finding of research misconduct. ORI made two findings of research misconduct against Plaintiff.[8] Obtaining the police report would not have changed the fact that Plaintiff was seen in the middle of the night taking items from her office,

---

[7]    (...continued)
use of Dr. Whitehurst is not material to these proceedings, and would not have had any effect on the investigation.

[8]     The first ORI research misconduct finding stated, "Respondent knowingly and intentionally committed misconduct in science when she fabricated and falsified data in her Research Record Notebook." The second finding was that "Respondent knowingly and intentionally committed misconduct in science by fabricating and falsifying data in her thesis, including the falsification and fabrication of autoradiographic films, computer image files she scanned from those films, numerical data she reduced from those computer files, documentation of those results in her black three ring binder and in the associated multiple figures and projections slides." Def. Exh. 3, ORI Charge Letter at 27.

even though she filed a police report stating that items were stolen from her office.

Plaintiff admits that she took items and documents from her office and later returned them to the University through her attorney. See Uzelmeier Affidavit (Pl. Exh. 1). Plaintiff further admits that through counsel, she withdrew her larceny complaint. Green Affidavit (Pl. Exh. 2). The material fact that ORI relied upon is Plaintiff's removal of the documents and data coupled with Plaintiff's claim that documents were stolen and her subsequent withdrawal of that claim. It defies reasonable credulity that Plaintiff would take the documents, file a police report, and return the documents with the intention of pursuing the larceny claim in "another arena." Green Affidavit (Pl. Exh. 2). Interestingly, Plaintiff failed to specify any other avenue in her affidavit that she took to pursue the issue of her allegedly stolen documents.

Finally, Plaintiff's assertions that ORI's delay in bringing findings of research misconduct should result in the reversal of the ALJ's decision is factually unsupported and misleading. As noted in Defendants' memorandum in support of the dispositive motion, after receiving MSU's Investigation Report, ORI has made repeated attempts through personal contact and written correspondence to resolve this matter with Plaintiff without having to resort to a costly and lengthy administrative hearing, including an attempt to settle this case via a Voluntary Exclusion Agreement (VEA). In a last effort attempt to settle this matter, OGC corresponded with Plaintiff's counsel in August, 2005, advising Plaintiff's counsel that if a settlement was not reached by the second week of September it would move forward with a charge letter. Plaintiff's counsel expressed an interest in settling the matter, but ultimately did nothing to do so. Even the ALJ noted that throughout the time that the matter was before ORI for investigation, the parties were in settlement negotiations, which continued until Plaintiff unilaterally and without

explanation discontinued communications.  Def. Exh. 2 at 4.  Thus, Plaintiff's assertions that

these charges are "stale" are not due to ORI's inaction in this case, but rather due to her own

dilatory actions, and cannot form the basis for a finding of abuse of discretion by the ALJ.

Respectfully submitted,

/s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

Agency Counsel:

JO AN ROCHEZ, Senior Attorney
ALICE TAYMAN, Senior Attorney
Office of the General Counsel, Public Health Division
U.S. Department of Health and Human Services

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| REBECCA UZELMEIER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 07cv753 (PLF) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| HEALTH AND HUMAN SERVICES, et al. | ) |
| | ) |
| Defendants. | ) |

---

**DEFENDANT'S STATEMENT OF GENUINE ISSUES AND RESPONSE
TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

**I.    DEFENDANT'S STATEMENT OF GENUINE ISSUES.**

Pursuant to the Local Civil Rules, a party opposing a motion for summary judgment must

provide "a separate concise statement of genuine issues setting forth all material facts as to

which it is contended there exists a genuine issue necessary to be litigated, which shall include

references to the parts of the record relied on to support the statement." LCvR 7(h); LCvR 56.l.

In the present matter, however, Defendant does not contend that any genuine issues of material

fact exist, and has so moved for summary judgment on its behalf. See Defendant's Motion to

Dismiss or, in the Alternative, for Summary Judgment and the Statement of Material Facts Not In

Genuine Dispute, attached thereto. Rather, in opposition to Plaintiff's motion for summary

judgment, Defendant contends that the Plaintiff has attempted to introduce factual allegations

and arguments that were not raised in the administrative matter below, and further failed to

dispute the "material" facts in this matter, which demonstrate that Defendant, and not Plaintiff,

would be entitled to summary judgment. See *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242

(D.C. Cir.1987) (*per curiam*) (only if the moving party satisfies his burden is the non-moving

party "required to provide evidence that would permit a reasonable jury to find" in its favor) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To the extent that this Court requires the Defendant to set forth the factual evidence favoring its opposition to the Plaintiff's motion for summary judgment, Defendant respectfully refers this Court to, and incorporates the Defendant's Statement of Material Facts Not in Genuine Dispute, the exhibits attached thereto, and the Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute, below.

## II.    DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE.

In her Statement of Material Facts Not in Dispute, Plaintiff violates the Administrative Procedure Act ("APA") by submitting "facts" that were never raised in the administrative proceeding or before the ALJ below.  Under the APA, the court's inquiry is limited to the case facts as presented in the administrative proceedings below, and the determination as to whether the agency articulated a satisfactory explanation for its decision, including a 'rational connection between the facts found and the choice made.'" *Burke v. U.S. E.P.A.*, 127 F.Supp.2d 235, 238 (D.D.C. 2001) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  "The scope of review under the 'arbitrary and capricious standard' is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43.  Accordingly, factual allegations and legal arguments not raised below, such as those raised by Plaintiff here, must be disregarded.  In any event, even with the additional facts, Plaintiff has failed to identify any **material** fact that supports her claim that she is entitled to summary judgment.  Having failed to demonstrate by admissible and relevant facts that she

entitled to summary judgment, the Court should deny Plaintiff's motion, and enter judgment in favor of Defendant.

**C.      Plaintiff Has Failed to Cite Any Facts Regarding the Matter at Issue – Her Research Misconduct.**

It is interesting to note that in both her Memorandum of Points and Authorities as well as her Statement of Material Facts, Plaintiff fails to address the merits of the case below – whether she fabricated her research results. This is similar to what the administrative bodies faced below, with Plaintiff citing to immaterial facts and making legal arguments. Even the ALJ noted the absence of any argument by the Plaintiff to the merits of the matter. See Def. Exh. 2 at 3. Accordingly, Plaintiff has failed to demonstrate that the debarment was an abuse of the ALJ's discretion.

**D.      Defendant's Response to Plaintiff Statement of Facts.**

Here, Plaintiff has failed to show that there are any material facts in support of his claim,[1] and Defendant addresses each of Plaintiff's numbered paragraphs contained in her Statement of Material Facts Not in Dispute as follows:

1.      Admit.

2.      Deny.  Although Plaintiff made allegations regarding Professor  Kaminski, Plaintiff failed to provide any evidence to support the allegations.  Professor Kaminski testified

---

[1]         "[T]he nonmoving party may defeat a motion for summary judgment . . . by calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party.  In that event, the moving party must respond by making an attempt to demonstrate the inadequacy of this evidence, for it is only by attacking all the record evidence allegedly supporting the nonmoving party that a party seeking summary judgment satisfies Rule 56's burden of production.  *Celotex*, 477 U.S. at 332.

before the MSU Investigative Committee that their relationship was "collegial," and that he had

supported Plaintiff's participation in six national scientific meetings between 1996 and 1999.

Def. Exh. 4 at 34.  Professor Kaminski further explained that he supported Plaintiff in her

professional development, and he set forth what support he provided.  Id. at 34-35.  Notably,

Plaintiff did not dispute any evidence or testimony by Professor Kaminski regarding the fact that

the information submitted by Plaintiff had been fabricated.  Def. Exh. 3 at 11-15.  Thus, Plaintiff

presented no evidence to indicate that Professor Kaminski had any differences with Plaintiff,

other than this incident.

3.     Admit.

4.     Admit.  MSU convened an Inquiry Panel whose duties were to investigate the

charge.  Def. Exh. 4.

5.     Admit.

6.     Fact No. 6 is a legal conclusion that is not appropriate for a Statement of Facts

pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h).  Accordingly, Plaintiff's Fact No. 6

should be disregarded.  To the extent that a response is required, Defendant disputes the fact.

The MSU Investigative Committee provided sufficient expertise and independence to evaluate

the evidence.  Def. Exh. 48.

7.     Fact No. 7 is a conclusory allegation that is not appropriate for a Statement of

Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h).  *Harding v. Gray*, 9 F.3d 150, 154

(D.C. Cir. 1993) (mere conclusory allegations are not enough to survive a motion for summary

judgment).  Accordingly, Plaintiff's Fact No. 7 should be disregarded.  To the extent that a

response is required, Defendant disputes the fact.  MSU would have taken Plaintiff's word if she

had provided a reasonable and plausible explanation for the data.  Def. Exh. 4.

8.      Fact No. 8 is a legal conclusion that is not appropriate for a Statement of Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h).  See *Harding*, supra.  Accordingly, Plaintiff's Fact No. 8 should be disregarded.  To the extent that a response is required, Defendant disputes the fact.  The MSU Investigative Committee provided sufficient expertise and independence to evaluate the evidence.  Def. Exh. 48.

9.      Defendant admits that Plaintiff contacted Dr. Whitehurst, and that Dr. Whitehurst worked at Forensic Justice Program.  The remaining allegations are conclusory allegations that are not appropriate for a Statement of Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h).  *Harding*, supra.  Accordingly, all other factual allegations in Plaintiff's Fact No. 9 should be disregarded.  To the extent that a response is required, Defendant disputes those allegations.

10.     Defendant is without sufficient information to admit or deny Plaintiff's Fact No. 10.

11.     Defendant admits that the MSU investigation relied upon testimony from witnesses, including Plaintiff, as the basis of its findings.  Defendant denies the remaining allegations as Plaintiff asked that the Whitehurst Investigative Team be brought in to "assist her in preparing an adequate defense and in ascertaining the truth behind Dr. Kaminski's allegations that she committed scientific misconduct."  Def. Exh 4 at 48.

12.     Defendant admits that MSU denied Plaintiff's request.

13.     Fact No. 13 is a legal conclusion that is not appropriate for a Statement of Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h).  See *Harding*, supra.  Accordingly, Plaintiff's Fact No. 13 should be disregarded.  To the extent that a response is required,

Defendant disputes the fact.  The MSU Investigative Committee provided sufficient expertise

and independence to evaluate the evidence.  Def. Exh. 4 at 48.  Defendant admits that, among

other reasons, the MSU Investigative Committee held that, because Plaintiff did not dispute the

fact that the data was fabricated, because Plaintiff did not ever make any formal allegations of

scientific misconduct against Professor Kaminski, and because Plaintiff has not provided any

evidence that Professor Kaminski tampered with her data, she did not even establish the basis for

opening an investigation into the conduct of Professor Kaminski.  Def. Exh. 4 at 49.  Rather, the

Committee found that the allegations made by Plaintiff against Professor Kaminski were made

"in bad faith," and were made with the intent to embarrass him.  *Id*.

14.     Fact No. 14 is a legal conclusion that is not appropriate for a Statement of Facts

pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h).  See *Harding*, supra.  Accordingly,

Plaintiff's Fact No. 14 should be disregarded.  To the extent that a response is required,

Defendant disputes the fact.  The MSU Investigative Committee found that the allegations made

by Plaintiff against Professor Kaminski were made "in bad faith," and were made with the intent

to embarrass him.  Def. Exh. 4 at 49.

15.     Fact No. 15 is a conclusory allegation that is not appropriate for a Statement of

Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h).  See *Harding*, supra.

Accordingly, Plaintiff's Fact No. 15 should be disregarded.  To the extent that a response is

required, Defendant admits that MSU denied Plaintiff's request because the MSU Investigative

Committee provided sufficient expertise and independence to evaluate the evidence.  Def. Exh. 4

at 48.

16.     Defendant has no information regarding the make-up of Dr. Whitehurst's team,

6

and Plaintiff is not the proper witness to provide that information.  The remaining allegation in Plaintiff's Fact No. 16 regarding MSU not wanting any oversight is a conclusory allegation that is not appropriate for a Statement of Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h).  See *Harding*, supra.  Accordingly, Plaintiff's Fact No. 16 should be disregarded.  To the extent that a response is required, Defendant denies the allegation, but admits that MSU denied Plaintiff's request because the MSU Investigative Committee provided sufficient expertise and independence to evaluate the evidence.  Def. Exh. 4 at 48.

17.     Plaintiff's allegation in Plaintiff's Fact No. 17 is a conclusory allegation that is not appropriate for a Statement of Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h).  See *Harding*, supra.  Accordingly, Plaintiff's Fact No. 17 should be disregarded.  Indeed, Plaintiff cites to no document or other evidence in support of this conclusory allegation.  To the extent that a response is required, Defendant denies the allegation, as it was Plaintiff's research misconduct, fabrication of data, and wrongful attempts to obstruct the investigation that is the root of the cause of the controversy.

18.     Defendant admits that MSU continued with the investigation after denying Plaintiff's request.  Defendant further admits that MSU properly and timely requested extensions of time to complete its inquiry.  Def. Exh. 9.  Defendant denies Plaintiff's conclusory allegation that MSU "dragged out" the investigation as the requests for extension of time were caused by Plaintiff's failure to provide information requested by the MSU Investigative Committee, and her failure to make herself available for interview by the Committee.  *Id*.

19-22.  Plaintiff's allegations in Plaintiff's Fact Nos. 19-22 are conclusory allegations that are not appropriate for a Statement of Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule

7

7(h). See *Harding*, supra. Accordingly, Plaintiff's Fact No. 19-22 should be disregarded. To the extent that a response is required, Defendant denies the allegations, the delay in the investigation were caused by Plaintiff's failure to provide information requested by the MSU Investigative Committee, and her failure to make herself available for interview by the Committee. Def. Exh. 9.

23-26. Plaintiff's allegations in Plaintiff's Fact Nos. 139-26 are irrelevant to the matter before the Court, and, accordingly are not "material" facts appropriate for a Statement of Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h). Accordingly, Plaintiff's Fact No. 23-26 should be disregarded.

27-34 and 37. Plaintiff's allegations in Plaintiff's Fact Nos. 27-34 and 37 are irrelevant to the matter before the Court, and, accordingly are not "material" facts appropriate for a Statement of Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h). As noted by the ALJ in this matter, the law clearly provides that a denial of any present intention to work in the scientific field is no basis for reducing a term of debarment. See Def. Exh. 2 at 3 (citing *Dr. Paul Langlois*, DAB No. 1409 (1993)). See also, Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment at 17-19. Moreover, the debarment regulations authorize HHS to exclude a person even though that individual is not currently participating in a grant or contract funded by the Department. See 2 C.F.R. § 180.150. Accordingly, Plaintiff's Fact Nos. 27-34 and 37 should be disregarded.

35-36. Plaintiff's allegations in Plaintiff's Fact Nos. 35 and 36 are irrelevant to the matter before the Court, as they do not reflect upon the findings of the ALJ, nor are they any indication as to the appropriateness of the debarment. Indeed, it the mere fact that Plaintiff has not been

charged with a crime since the incident has no bearing on the finding that Plaintiff obstructed the investigation in this matter, or the fact that she has failed to take responsibility for her misconduct. Accordingly, Plaintiff's Fact Nos. 35 and 36 are not "material" facts appropriate for a Statement of Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h), and should be disregarded.

38.     Defendant admits that on September 12, 2006, ORI issued an notification that it proposed a "finding of misconduct in science against [her] based upon accumulated evidence including the MSU Report, and additional analysis and information obtained by ORI during its oversight review of the MSU Report."

39.     Whether or not ORI sought Plaintiff's input with respect to the "additional analysis and information" it had obtained, is irrelevant to the matter before the Court, as it does not reflect upon the findings of the ALJ, nor are they any indication as to the appropriateness of the debarment. Indeed, Plaintiff has failed to make any demonstration that an obligation is imposed upon ORI to seek her input as to the matters uncovered in its investigation. Accordingly, Plaintiff's Fact No. 39 is not "material" facts appropriate for a Statement of Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h), and should be disregarded.

40.     Admit.

41.     Admit.

42.     Admit.

43.     Denied. Plaintiff has been provided a full copy of the administrative record before the ALJ, which is the administrative record in this matter. Plaintiff is entitled to records that ORI relied upon in making findings of research misconduct, which Plaintiff received with

the charge letter dated September 6, 2006. Def. Exh**.** 3 (ORI charge letter). The charge letter

included an ORI image supplement in addition to the MSU investigation report.  MSU sent the

report when the findings were made with photographic quality reproductions of the figures and

data in question. See MSU Investigation Report at p.48. This is confirmed by Plaintiff's

statement in her hearing request that her current attorney "recently obtained" the documents that

were in the control of Plaintiff's previous attorney.  See Def. Exh. 3 at 15.  In addition, Plaintiff,

by her own admission, had possession of "all the materials related to this case matter which still

exist" in storage or with her previous counsel.  See Def. Exh. 2 at 15.

44-46.  Plaintiff's allegation in Plaintiff's Fact Nos. 44-46 are conclusory allegations and

irrelevant to the matter before the Court, and are not appropriate for a Statement of Facts

pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h).  See *Harding*, supra.  Accordingly,

Plaintiff's Fact Nos. 44-46 should be disregarded.  In any event, Defendant has demonstrated in

its Memorandum of Points and Authorities in Support of Motion to Dismiss or, in the

Alternative, for Summary Judgment, because ORI merely conducts an investigation but

adjudicates none of the respondent's rights, its recommendation was 'merely preparatory to some

further proceeding' and 'determined the rights and liabilities of no one.'"  *Popovic v. United*

*States*, 997 F.Supp. 672, 679 (D.Md. 1998) (quoting *Atlantic Richfield Co. v. U.S. Department of*

*Energy*, 769 F.2d 771, 787 (D.C. Cir.1984)).  Only after ORI issues a charge letter and the

respondent properly requests a hearing is the DAB charged with conducting a trial-type hearing,

through the designated ALJ, at which HHS bears the burden of proving scientific misconduct by

a preponderance of the evidence.  42 C.F.R. §§ 93.505-93.506.  Thus, because Plaintiff failed to

properly request a hearing, the sole administrative determination to be reviewed by the Court in

this matter is the ALJ's dismissal of Plaintiff's Request for Hearing, and the administrative record consists of solely those documents before the ALJ at the time of the dismissal, and not the documents within ORI's possession.

47-48 and 50-51.    Denied.  Defendant has demonstrated, and the ALJ properly determined that Plaintiff failed to properly request and administrative hearing, that Plaintiff failed to properly contest each of the allegations raised against her, and, accordingly, any subsequent filing by Plaintiff was untimely and out of order.  Def. Exh. 2.

49.    Plaintiff's allegation in Plaintiff's Fact No. 49 is irrelevant and not a "material" fact relating to the matter before the Court as to whether the ALJ properly dismissed Plaintiff's request for a hearing, and is not appropriate for a Statement of Facts pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h).  See *Harding*, supra.  Accordingly, Plaintiff's Fact No. 49 should be disregarded.

52.    Admit.

53.    Admit.  As demonstrated in Defendant's Reply memorandum, Plaintiff did not submit a proper hearing request, because her hearing request was noncompliant   See Exh. 2 at 9. Thus, any subsequent document submitted by Plaintiff was not the supplementation of a proper but incomplete request, rather it was an attempt to redo the improper hearing that utterly failed to comply with the regulations, and was therefore improper.  As the ALJ pointed out, Plaintiff's hearing request, which lacked any detailed, substantive reason for her denials, "is exactly the type of hearing request that the regulations sought to eliminate."  *Id*. at 8.  Moreover, once the ALJ denied Plaintiff's request for a hearing, all other matter were moot and need not be addressed.

54.    Admit.

55-58.  Because this matter is not a damages claim but rather is merely an APA

administrative review matter, Plaintiff's allegation in Plaintiff's Fact Nos. 55-58 are irrelevant

and not "material" facts relating to the matter before the Court as to whether the ALJ properly

dismissed Plaintiff's request for a hearing, and is not appropriate for a Statement of Facts

pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h).  See *Harding*, supra.  Accordingly,

Plaintiff's Fact No. 55-58 should be disregarded.  In any event, it is not unreasonable that future

employers, especially those who require professional ethics in their dealings, are made aware of

Plaintiff's deceptive and wrongful conduct, so as to adequately and fully determine the

appropriateness of hiring Plaintiff.

59.    Admit.

60.    Denied.  Before the ALJ, Plaintiff did not deny wrongdoing, but rather merely

raised procedural challenges to the debarment proceedings.  Def. Exh. 2.

                              Respectfully submitted,


                               /s/ Jeffrey A. Taylor
                              JEFFREY A. TAYLOR, D.C. BAR # 498610
                              United States Attorney


                               /s/ Rudolph Contreras
                              RUDOLPH  CONTRERAS, D.C. BAR # 434122
                              Assistant United States Attorney


                               /s/ Darrell C. Valdez
                              DARRELL C. VALDEZ, D.C. BAR # 420232
                              Assistant United States Attorney
                              Judiciary Center Building
                              555 4th St., N.W., Civil Division
                              Washington, D.C.  20530
                              (202) 307-2843

Agency Counsel:

JO AN ROCHEZ, Senior Attorney
ALICE TAYMAN, Senior Attorney
Office of the General Counsel, Public Health Division
U.S. Department of Health and Human Services

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

REBECCA UZELMEIER                )
                                     )
          Plaintiff,           )
                                     )
        v.                   )     Civil Action No. 07cv753 (PLF)
                                     )
UNITED STATES DEPARTMENT OF   )
HEALTH AND HUMAN SERVICES, et al.  )
                                     )
         Defendants.       )

---

## <u>ORDER</u>

Upon consideration of Plaintiff's Motion for Partial Summary Judgment, the Defendants'

Opposition thereto, it is this _____ day of _____, 2008

     ORDERED that the Plaintiff's motion is DENIED, and it is further

     ORDERED that Judgment be entered in favor of the Defendants.


                                     _____
                                    PAUL F. FRIEDMAN
                                    UNITED STATES DISTRICT JUDGE