UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
REBECCA UZELMEIER,                  )
                                    )
            Plaintiff,              )
                                    )
    v.                              )    Civil Action No. 07-0753 (PLF)
                                    )
UNITED STATES DEPARTMENT OF         )
   HEALTH AND HUMAN SERVICES, *et al.*, )
                                    )
            Defendants.             )
_____)

OPINION

Plaintiff Rebecca Uzelmeier filed this lawsuit under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, seeking judicial review of the decision of the United States Department of Health and Human Services Office of Research Integrity ("ORI") to debar her from being a contractor with the federal government for a period of five years, and seeking disclosure of documents under the Privacy Act, 5 U.S.C. § 552a. See Compl. at 1-2. This matter is before the Court on the defendants' motion to dismiss or, in the alternative, for summary judgment and plaintiff's cross motion for partial summary judgment.[1]

---

[1] The briefs submitted to the Court in connection with these motions include: Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment ("Defs' Mot."); Defendants' Statement of Material Facts Not in Genuine Dispute ("Def's SMF"); Plaintiff's Motion for Partial Summary Judgment and Opposition to Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment ("Pl's Mot."); Plaintiff's Opposition to Defendants' Statement of Material Facts Not in Genuine Dispute ("Pl's Resp."); Plaintiff's Statement of Material Facts Not in Genuine Dispute ("Pl's SMF"); Defendants' Reply to Plaintiff's Opposition Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment and

I.  BACKGROUND

In 1999, plaintiff Rebecca Uzelmeier (née Marcus) was a Ph.D. candidate at Michigan State University ("MSU") in the Department of Pharmacology and Toxicology, under the supervision of Professor Norbert Kaminski.  See Compl. ¶ 9; Defs' SMF ¶ 1.  On July 26, 1999, Professor Kaminski raised allegations of scientific misconduct against Ms. Uzelmeier.  See Defs' SMF ¶ 2; see Pl's SMF ¶ 3.  The university launched an investigation shortly thereafter. See Pl's SMF ¶ 4.

On March 17, 2000, MSU issued a "Report of Assessment of an Allegation of Misconduct in Research Against Ms. Rebecca Marcus, Ph.D. Student, Department of Pharmacology and Toxicology" recommending that MSU proceed to an Inquiry.  See Defs' SMF ¶ 7.

On September 18, 2000, an MSU Inquiry Panel found that the evidence was "sufficient, credible, and of such merit that an Investigative Committee could reasonably conclude that Misconduct occurred, and that an Investigation is therefore warranted."  Def's SMF ¶ 8.  In its final report dated March 5, 2002, the MSU Investigative Committee found that Ms. Uzelmeier had committed misconduct in research.  See Defs' SMF ¶ 9.

In a Charge Letter dated September 6, 2006, the Office of Research Integrity within the United States Department of Health and Human Services notified Ms. Uzelmeier of its proposed findings of misconduct in science against her based upon the MSU Report and

Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defs' Rep."); and Plaintiff's Reply in Support of Plaintiff's Partial Motion for Summary Judgment ("Pl's Rep.").

2

additional analysis and information obtained by ORI during its oversight review of the MSU Report.  See Defs' SMF ¶ 10; see also Exh. 3 to Defs' Mot, September 6, 2006 Letter from ORI to Uzelmeier.  Based upon ORI's findings of research misconduct, the HHS debarring official proposed to debar plaintiff from eligibility for any contracting or subcontracting with any federal agency and from any eligibility for or involvement in certain nonprocurement programs – defined by the regulations as "covered transactions" – for a period of five years, unless plaintiff contested the proposed findings of misconduct in science and accompanying administrative actions by requesting an administrative hearing before an administrative law judge.  See Exh. 3 to Defs' Mot, September 6, 2006 Letter from ORI to Uzelmeier at 2-3.

On September 14, 2006, pursuant to the Privacy Act, 5 U.S.C. § 552a(d), Ms. Uzelmeier requested that HHS provide her with a copy of "all documents referenced in the charge against Rebecca Uzelmeier, dated September 6, 2006, but which were not attached to said charge."  Pl's SMF ¶ 41.  On September 19, 2006, Ms. Uzelmeier asked HHS to provide her with a copy of "the complete administrative record relied upon by the HHS as the basis for filing the debarment charge against Rebecca Uzelmeier[.]"  Pl's SMF ¶ 42.  Plaintiff alleges that "HHS presently has these records in its possession, but has refused to comply with either of [her] requests for copies of her records.  [She] has never received a copy of the administrative record relied upon by HHS to support its debarment action."  Pl's SMF ¶ 43.[2]

---

[2]     By contrast, defendant asserts that plaintiff now has received all of the documents relied upon by the administrative law judge.  See Defs' Rep. at 18.

On October 11, 2006, Ms. Uzelmeier filed a request for hearing to contest ORI's proposed findings of misconduct and proposed debarment. See Defs' SMF ¶ 11; see also Exh. 5 to Defs' Mot., Request for Hearing. On October 19, 2006, ORI filed a motion to dismiss plaintiff's request for hearing, alleging that Ms. Uzelmeier failed to raise a genuine issue of material fact or law that could be properly addressed in a hearing. See Defs' SMF ¶ 12; see also Exh. 6 to Defs' Mot., Motion to Dismiss Respondent's Hearing Request With Prejudice. On October 30, 2006, plaintiff filed a motion to dismiss HHS's proposed debarment and a request to supplement her request for a hearing under 42 C.F.R. § 93.501(d). See Pl's SMF ¶¶ 48, 51. On November 9, 2006, plaintiff filed an opposition to ORI's motion to dismiss her hearing request. See Defs' SMF ¶ 13; see also Exh. 7 to Defs' Mot., Mrs. Uzelmeier's Opposition to Dismiss Respondent's Hearing Request.

In a decision dated March 5, 2007, an administrative law judge ("ALJ") at HHS determined that Ms. Uzelmeier's request for a hearing did not raise a genuine dispute of fact or law and, as a result, dismissed her hearing request. See Defs' SMF ¶ 14; see also Exh. 2 to Defs' Mot., Dismissal of Respondent Uzelmeier's Hearing Request ("Hearing Request Dismissal"). The ALJ did not rule on plaintiff's motion to dismiss HHS's proposed debarment and request to supplement her original request for hearing. See Pl's SMF ¶ 53. Based upon the denial of the hearing request, ORI's proposed findings of research misconduct and the HHS Debarring Official's proposed five-year debarment of Ms. Uzelmeier became final, effective March 12, 2007. See Defs' SMF ¶ 15; see also Exh. 1 to Defs' Mot., March 27, 2007 Notice of Administrative Actions. Specifically, the ORI found that plaintiff "committed misconduct in

4

science by intentionally and knowingly fabricating and falsifying data in research supported by National Institute of Environmental Health Sciences (NIEHS), National Institutes of Health (NIH)[.]" Exh. 1 to Defs' Mot., March 27, 2007 Notice of Administrative Actions.

Ms. Uzelmeier withdrew from the University in 1999 and has not received a Ph.D or any other science-related degree. See Pl's SMF ¶ 27. She works as a financial analyst and is not a federal government contractor. See Pl's SMF ¶¶ 28, 31. She asserts that she has no intention of returning to the sciences or working on any project sponsored by or paid for by the federal government. See Pl's SMF ¶¶ 30, 32, 34.

## II.  DEBARMENT

### A.  Legal Framework

#### 1.  Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See

Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hosp. Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); Washington Post Co. v. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Plaintiff is required to provide evidence that would permit a reasonable jury to find in her favor.  See Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 127 S.Ct. 1769, 1776 (2007) ("where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  To defeat a motion for summary judgment, a

6

plaintiff must have more than "a scintilla of evidence to support [her] claims." Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

2.  The Administrative Procedure Act

Judicial review of final agency actions is governed by Section 706 of the Administrative Procedure Act. See 5 U.S.C. § 706; see also City of Las Vegas v. Lujan, 891 F.2d 927, 932 (D.C. Cir. 1989). Under Section 706, a reviewing court may set aside agency actions, findings, or conclusions when they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. See 5 U.S.C. § 706(2)(A); Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 375 (1989). In reviewing the agency's actions, the Court considers whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered all relevant factors. See Marsh v. Oregon Natural Resources Council, 490 U.S. at 378; Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-16 (1971). The party challenging an agency's action as arbitrary and capricious bears the burden of proof. See City of Olmsted Falls v. F.A.A., 292 F.3d 261, 271 (D.C. Cir. 2002). To survive review under the "arbitrary and capricious" standard, an agency must "examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." PPL Wallingford Energy LLC v. Federal Energy Regulatory Comm'n, 419 F.3d 1194, 1198 (D.C. Cir. 2005) (citing Motor

Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (internal citations and quotations omitted).

### 3. Regulations

The version of the regulations in effect at the time of the agency's decision in this matter provided:

> (a) To protect the public interest, the Federal Government ensures the integrity of Federal programs by conducting business only with responsible persons.
>
> (b) A Federal agency uses the nonprocurement debarment and suspension system to exclude from Federal programs persons who are not presently responsible.
>
> (c) An exclusion is a serious action that a Federal agency may take only to protect the public interest. A Federal agency may not exclude a person or commodity for the purposes of punishment.

45 C.F.R. § 76.110 (2006). Federal government agencies "may debar a person for . . . any . . . cause of so serious or compelling a nature that it affects [his or her] present responsibility." 45 C.F.R. § 76.800 (2006).

The Department of Health and Human Services' Office of Research Integrity is authorized to "conduct reviews of research misconduct proceedings." 42 C.F.R. § 93.403. It may "make appropriate research misconduct findings and propose HHS administrative actions." Id. A respondent "may contest ORI findings of research misconduct and HHS administrative actions, including any debarment or suspension action, by requesting a hearing [before an administrative law judge] within 30 days of receipt of the charge letter[.]" 42 C.F.R. § 93.501(a).

According to the regulations:

> The request for a hearing *must* – (1) Admit or deny each finding of research misconduct and each factual assertion made in support of the finding; (2) Accept or challenge each proposed HHS administrative action; (3) Provide detailed, substantive reasons for each denial or challenge; (4) Identify any legal issues or defenses that the respondent intends to raise during the proceeding; and (5) Identify any mitigating factors that the respondent intends to prove.

42 C.F.R. § 93.501(c) (emphasis added).

After a respondent receives notification of the appointment of an ALJ, she "has 10 days to submit a written request to the ALJ for supplementation of the hearing request to comply fully with the requirements of paragraph (c) of this section." 42 C.F.R. § 93.501(d)(1). This written request to supplement, however, "must show good cause . . . and set forth the proposed supplementation of the hearing request." Id. The ALJ "*may* permit the proposed supplementation of the hearing request in whole or in part upon a finding of good cause." Id. (emphasis added). "Good cause means circumstances beyond the control of the respondent or respondent's representative and not attributable to neglect or administrative inadequacy." Id. § 93.501(d)(2).

The ALJ "*must dismiss* a hearing request if the respondent . . . does not raise a genuine dispute over facts or law material to the findings of research misconduct and any administrative actions, including debarment and suspension actions, in the hearing request and any supplement granted by the ALJ under § 93.501(d)[.]" 42 C.F.R. § 93.504(a) (emphasis added). Conversely, the ALJ "*must grant* a respondent's hearing request if the ALJ determines

there is a genuine dispute over facts material to the findings of research misconduct or proposed administrative actions, including any debarment or suspension action." Id. § 93.503(a). That said, a respondent's "general denial or assertion of error for each finding of research misconduct, and any basis for the finding, or the proposed HHS administrative actions in the charge letter, is not sufficient to establish a genuine dispute." Id.

### B. Discussion

Ms. Uzelmeier and the defendants have filed cross motions for summary judgment with respect to the three counts of her complaint in which she contends that her debarment by the HHS administrative law judge was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" within the meaning of the Administrative Procedure Act. See 5 U.S.C. § 706. In Count 2 of the complaint, Ms. Uzelmeier argues that HHS' decision to debar her was impermissibly punitive rather than done "'to protect the public interest . . . [and] integrity of Federal programs[.]'" Compl. ¶ 36 (first brackets in original) (quoting 45 C.F.R. § 76.110(a) (2006)). In Count 3, she asserts that the debarment proceeding "must be reversed as untimely." Compl. ¶ 48. In Count 4, plaintiff argues that the decision of the administrative law judge of the HHS Departmental Appeals Board should be reversed because it "improperly found that [plaintiff] raised no issues of material fact because, by refusing to rule on her motion to supplement her hearing request, it effectively denied her the ability to do so." Compl. ¶¶ 57-58.

With respect to Count 2, plaintiff argues that HHS cannot meet the standard for debarment, the purpose of which is not to punish an individual, but to remove someone from eligibility for government contracting work, and only when there is a cause "of so serious or compelling a nature that it affects their present responsibility." Compl. ¶ 37 (quoting 45 C.F.R. § 76.800(d)). Plaintiff argues that there is insufficient evidence that she lacks "present responsibility," especially because she lacks the credentials to seek employment in her former field and withdrew from the program at MSU. See Compl. ¶¶ 38-39, 42. She asserts that the decision to bar her from government contracting for five years, rather than the more typical three year period, is further evidence of the punitive nature of the debarment decision. See Compl. ¶¶ 40-41. She also alleges that the long time period between the underlying events and the decision to debar her is punitive because to "impose a five year debarment period on an individual seven years after their alleged misconduct, when there is no evidence that the individual is a present threat to the public, cannot be justified as an action that is solely for the protection of the public interest." Compl. ¶ 43. She notes repeatedly that she is not currently involved in any program that receives federal funding, or any scientific research whatsoever.

Plaintiff presented these exact arguments in her request for a hearing, and the ALJ addressed them in dismissing the hearing request. See Hearing Request Dismissal at 3, 5. Specifically, in a section entitled "No Present Harm/Improper Punishment," the ALJ rejected plaintiff's argument that "she is no longer a member of the scientific community, is in no position to seek government grants or contracts, and therefore poses no threat to any government programs, making debarment unnecessary." Hearing Request Dismissal at 3; see also id. at 5

11

(rejecting plaintiff's argument that the delay in bringing the debarment proceeding transformed it into improper punishment). While debarment requires the existence of "past misconduct," the phrase "present responsibility" does not refer to plaintiff's current job, but rather to whether a person's exclusion is in the public interest. See Burke v. United States Environmental Protection Agency, 127 F. Supp. 2d 235, 239 (D.D.C. 2001) ("the final decision to debar an individual must focus on that individual's present business responsibility," and "the debarring official must determine whether any mitigating factors show that the business risk to the government has been eliminated to the extent that debarment would be unnecessary."). That is to say, the relevant question is whether or not one could or should be entrusted with public funds or a public contract at the present time or going forward, not whether one currently is so entrusted. Indeed, as the ALJ noted, the regulations explicitly provide that a person may be debarred even if not currently involved in a covered transaction, so long as he or she "has been" *or* "reasonably may be expected to be" so involved. See Hearing Request Dismissal at 2 (citing 45 C.F.R. § 76.135 (2006)). Plaintiff has not shown that the ALJ's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." On the contrary, the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." PPL Wallingford Energy LLC v. Federal Energy Regulatory Comm'n, 419 F.3d at 1198; see Burke v. United States

12

Environmental Protection Agency, 127 F. Supp. 2d at 241.[3]  The Court therefore will grant judgment for defendants on Count 2 of the complaint.

With respect to Count 3, plaintiff argues that because HHS learned of the alleged misconduct in 1999 and did not initiate proceedings against plaintiff until 2006, the debarment should be reversed as untimely.  See Compl. ¶ 48; Pl's Mot. at 35-37.  Plaintiff cites no statute or regulation which would mandate that the debarment proceeding have been dismissed as untimely.  The ALJ addressed this argument in her decision.  See Hearing Request Dismissal at 4, 5.  As the ALJ noted, and plaintiff now seems to concede, the currently applicable six-year statute of limitations does not apply to this proceeding because the misconduct at issue predates the effective date of the statute of limitations regulation.  See 42 C.F.R. § 93.105(b)(3).  Plaintiff cites one case in this section of her brief, Roemer v. Hoffman, 419 F. Supp. 130 (D.D.C. 1976).  In that case, the district court remanded for further consideration of several specific mitigating factors "which appear to diminish the force of [the criminal] conviction as an indication of [plaintiff's] present responsibility."  Id. at 132.  According to the court in Roemer, those several factors included plaintiff's "character before the offense occurred, the circumstances surrounding the offense, the deterrent effects of the prior 29-month suspension, of the conviction, and of the payment to the government of . . . restitution, the length of time which has passed since the offense and since the conviction, and [plaintiff's] character since the offense and conviction."  Id.

---

[3]  In Burke, Judge Kennedy also deferred to the agency's decision to impose a five year period of debarment, rather than three years, and concluded that the agency had not acted arbitrarily, capriciously or in violation of law, as this Court does in the circumstances presented here.  See Burke v. United States Environmental Protection Agency, 127 F. Supp. 2d at 241-42.

By contrast, in this case plaintiff has admitted no past wrongdoing and has not demonstrated that her present responsibility has changed or improved since the underlying incidents, nor is there any restitution to be made.  The length of time between the underlying events and the debarment in Roemer was just one factor that the court considered, but there is no indication that it was the dispositive factor or even the primary one.  Rather, it seems that the court in Roemer looked at a number of factors which, taken together, might have spoken to the plaintiff's "present responsibility," and requested more explanation from the ALJ on remand. See Roemer v. Hoffman, 419 F. Supp. at 132; see also Canales v. Paulson, Civil Action No. 06-1330, 2007 WL 2071709, * 6 (D.D.C. July 16, 2007) (plaintiff presented "a variety of mitigating factors" to the debarring official).  That is not the case here.  Unlike Roemer and Canales, this is not a case about an administrative law judge failing to consider mitigating factors at a hearing – in this case, plaintiff failed to meet the requisite standard to show that there were disputed issues requiring a hearing, as provided for in the regulations.  Plaintiff has not demonstrated that the ALJ's rejection of her timeliness argument was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.  The Court therefore will grant judgment for defendant on Count 3 of the Complaint.

With respect to Count 4, plaintiff argues that the decision of the administrative law judge of the Departmental Appeals Board should be reversed because her request for a hearing was improperly dismissed.  See Compl. ¶¶ 50-51.  Plaintiff argues that the ALJ "improperly found that [plaintiff] raised no issues of material fact because, by refusing to rule on her motion to supplement her hearing request, it effectively denied her the ability to do so."

14

Compl. ¶¶ 57-58. As discussed above, an ALJ may grant a respondent permission to supplement a request for a hearing, if the respondent demonstrates good cause. See 42 C.F.R. § 93.501(d)(1). While an ALJ may *not* grant such a request without a showing of good cause, there is nothing to suggest that the request *must* be granted if there is a showing of good cause – that is to say, the rule is permissive, rather than mandatory. As such, it does not seem that the mere refusal to grant a request to supplement should alone be the basis of a reversal of a decision not to grant a hearing request.

Moreover, as noted above, a respondent's "general denial or assertion of error for each finding of research misconduct, and any basis for the finding, or the proposed HHS administrative actions in the charge letter, is not sufficient to establish a genuine dispute." 42 C.F.R. § 93.503(a). The ALJ concluded, after reviewing and addressing the points made and repeated throughout plaintiff's 200-page request for a hearing, that plaintiff's "general denials and assertions of error are not sufficient to establish a genuine dispute." Hearing Request Dismissal at 9. This Court also has reviewed plaintiff's 200 page hearing request and agrees with the ALJ's characterization of it. The Court is not persuaded that the ALJ's dismissal of plaintiff's hearing request, and simultaneous failure to rule on the discretionary request to supplement the request for a hearing, was an abuse of discretion. The Court therefore will grant judgment for the defendants on Count 4 of the complaint.

IV.  PRIVACY ACT

Count 1 of Ms. Uzelmeier's complaint alleges that HHS violated the Privacy Act "by failing to comply with [plaintiff's] request for the complete administrative record relied upon by HHS as the basis for its debarment action."  Compl. ¶ 33.  Defendants move to dismiss plaintiff's Privacy Act claim, arguing that the particular records at issue are exempt from the relevant provisions of the Privacy Act, because they are "information compiled in reasonable anticipation of a civil action or proceeding."  See Defs' Mot. at 7-9 (quoting 5 U.S.C. § 552a(d)(5)).  The Court agrees, and therefore will dismiss Count 1 of the complaint.

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used." Bartel v. Fed. Aviation Admin., 725 F.2d 1403, 1407 (D.C. Cir. 1984).  The Privacy Act prohibits covered agencies from improperly denying access to records they maintain.  See 5 U.S.C. § 552a(d)(1) ("Each agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof . . . .").  Individuals who believe they have been wrongly denied access to records pertaining to them may bring a civil action to compel the agency to disclose the records.  See 5 U.S.C. § 552a(g)(1)(B) (creating cause of action for improper withholding); id. § 522a(g)(3)(A)-(B) (outlining relief available in such an action).

16

This right of access, however, is limited: for example, "nothing in this section shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding." 5 U.S.C. § 552a(d)(5). As defendants rightly point out, see Defs' Mem. at 7, this provision applies to materials prepared in anticipation of administrative proceedings as well as to judicial proceedings. See Martin v. Office of Special Counsel, 819 F.2d 1181, 1187-88 (D.C. Cir. 1987) (holding that Congress intended to shield materials prepared in anticipation of administrative quasi-judicial proceedings). The material in this case fits that description, and plaintiff therefore never had any right to its disclosure under 5 U.S.C. § 552a(d)(1). Accordingly, the Court will dismiss Count 1 of the complaint for failure to state a claim.

An Order consistent with this Opinion will be issued this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: March 31, 2008